MARTHA F. WAHL

*v.*

FRANKLIN P. STOY.

[Submitted February 5th, 1907. Decided March 5th, 1907.]

1. A husband and wife owned adjoining lots in severalty. As a part of a sale of the husband's lot he and his wife executed an agreement reciting that one of the considerations of the conveyance was that no building should at any time be erected on the wife's lot nearer than five feet of the dividing line. The contract was originally intended to be signed by the husband alone, but the wife's name was subsequently interlined in ink as a party of the first part, though the other changes necessary to make the agreement conform to such change were not made, so that the covenants as written appeared only to bind the husband.—*Held,* that the contract, construed in accordance with the intent of the parties, was sufficient to bind the wife.

2. Where a husband and wife owned adjoining lots in severalty, and, as part of a sale of the husband's lot, the wife joined in a contract restricting the use of her lot by prohibiting an erection thereon less than five feet from the division line, her dower interest in her husband's lot constituted a sufficient consideration for her agreement, and was sufficient to bind her property by such restriction.

3. Where an agreement imposed a building restriction on defendant's vendor, such restriction might be enforced by injunction against defendant who took with notice,. though the agreement was not recorded.

4. At the time defendant purchased his lot, which adjoined plaintiff's. property, the vendor's husband informed him that there was a restriction on the lot covering about five feet. Defendant then asked if the restriction prevented him from building a bay-window, and was informed that it related only to the body or wall of defendant's house. Defendant took no steps to ascertain the nature of the restriction from complainant,. which in fact prohibited the construction of any part of a building nearer than five feet of complainant's west line.—*Held*, that defendant was. charged with notice of the restriction as it in fact existed.

5. Where defendant had notice of a covenant binding his lot, prohibiting the erection of a building within five feet of complainant's line, a new deed procured by defendant from his vendor for the purpose of curing an. alleged mistake as to such restriction in the original deed, reciting that the restriction only restrained the erection of the main wall of defendant's building nearer than five feet from the line, was ineffective to alter the original restriction.

On bill for injunction to restrain defendant from violating restriction contained in deed. Final hearing on pleadings and proofs.

*Messrs. Thompson & Cole,* for the complainant.

*Messrs. Godfrey & Godfrey,* for the defendant.

BERGEN, V. C.

Alfred C. McClellan was the owner of a lot of land fifty feet in width fronting on Pacific avenue, in the city of Atlantic City,. and his wife Mary of a lot forty feet in width, adjoining on the west of her husband's lot. By their deed dated February 2d, 1904, in consideration of the sum of $35,000, they conveyed to. the complainant the husband's lot. On the same day an agreement was drawn, signed and acknowledged in due form by McClellan and his wife as parties of the first part, by the terms of which after, among other matters, reciting the conveyance to the complainant, and that one of the considerations of that purchase was that no building should at any time be erected nearer than five feet of the westerly line of the lot that day conveyed to complainant, the party of the first part, agreed that no building to

be thereafter erected on the adjoining lot should be erected nearer than five feet from the westerly line of complainant's lot.

On September 1st, 1904, Mary A. McClellan and her husband conveyed her lot to the defendant. This deed contained the following stipulation,

"subject nevertheless to the condition and restriction that no building, or any part of a building, shall be erected within five feet of the easterly line of the above-described premises."

And on the 13th day of June, 1905, a deed was executed by the grantors last named to the defendant, which after reciting that the above restriction was inserted in the former deed by inadvertence and mistake, and declaring that it was not the purpose and intention to restrict the five feet mentioned as to the eaves, bay-window or similar projections of any building to be erected on said land, granted, conveyed, released and confirmed to the defendant the premises described in the former deed subject to the restriction "that the main wall of no building shall be erected within five feet of the easterly line of the above-described premises."

The defendant has so placed his building that the eaves and a bay-window occupy a part of the five feet which the complainant insists her agreement forbids, and this bill is filed to compel the defendant to remove these encumbrances.

The first point raised by the defendant is that the covenants in the contract restricting the use of the wife's land all run in the name of the husband, and cannot bind the wife, the owner of the property sought to be restricted, even if it was an effective agreement in other respects. As the agreement is the foundation of complainant's claim, this question must be first met and disposed of. The original contract has been put in evidence, and an examination of it shows that the draughtsman, at the time of its preparation, must have been under the impression that the title to the land sought to be restricted by the agreement was in the husband, and that he alone was to execute it, for the paper is typewritten, and the name of the wife, as a party of the first part interlined in ink, while other changes necessary to make the agreement conform to the change in the first clause were not

made, and the executed contract stands precisely as it was first drafted, with the exception that the name of the wife is inserted as one of the parties of the first part.

There was but one purpose sought to be accomplished by this agreement, and that was a covenant that the owner of the lot referred to in it would not erect on it any building nearer than five feet of the westerly line of the lot sold to the complainant, and it is a rule of construction that if the court, with knowledge of the situation in which the contracting parties stood at the time of executing the agreement, and with a full understanding of the force and import of the words, can ascertain the meaning and intention of the parties from the language of the instrument, it is its duty to determine the right of the parties in accordance therewith. *Culver* v. *Culver, 39 N. J. Law (10 Vr.) 574.*

The contract, in which the wife is one of the parties of the first part, recites that Alfred C. McClellan and Mary A., his wife, had conveyed to the complainant a lot of land fifty feet-front, located at the northwesterly corner of Pacific and States avenues, and that one of the considerations which induced the complainant to purchase that lot was that no building should at any time thereafter be erected nearer than five feet of the westerly line of the lot so conveyed to her, and also that the party of the first part was the owner of the land immediately adjoining such westerly line for a distance of forty feet along Pacific avenue. Following these recitals,

"the party of the first part, for himself, his heirs and assigns, in consideration of the premises, and of the sum of one dollar, to him duly paid by the party of the second part, and also for the benefit of the land retained by him, as well as that conveyed as aforesaid, hereby covenants and agrees to and with the party of the second part, her heirs and assigns, that no building to be hereafter erected on the lot adjoining on the west the lot hereinabove and in said deed described shall be erected nearer than five feet from the westerly line of said described lot, and that said restriction shall attach to and run with the land, and bind all future owners of the lot immediately adjoining on the west to lands so as aforesaid conveyed; and the said Alfred C. McClellan, for himself and his heirs and assigns, covenants and agrees to and with the said Martha F. Wahl, her heirs and assigns, that he and they shall, in every deed of conveyance of said adjoining lot hereafter to be made by him, them, or any of them, insert and include a covenant, condition, agreement and restriction in all respects the same as the above."

The reasonable interpretation of the agreement is that it was intended by the parties that the owner of the adjoining lot, the title to which was vested in the wife, should be bound as stipulated therein, and it is the duty of this court to give effect to that intention. The words, "himself, his heirs and assigns," cannot be permitted to overcome the intention of the parties, to be fairly gathered from the agreement, that the wife should be bound by its covenants, for if the contract admits of two inferences it is to be interpreted in the sense in which the promisor had reason to suppose it was understood by the promisee. *Potter* v. *Berthelet, 20 Fed. Rep. 240.*

Certainly the complainant understood that the wife as owner was binding herself according to the terms of the agreement, and that it was the intention of the wife, as one of the parties to the agreement, to contract with reference to the land which she owned, is strengthened by the fact that otherwise no reason is apparent why she should be a party to a party to a contract which had no purpose other than the placing of a restriction on her land for the benefit of the adjoining landowner in part consideration of the purchase price for the land sold by the husband and wife to complainant. The construction of an agreement should "be favorable, and as near the minds and apparent intents of the parties as it possibly may be and the law will permit." *Shep. Touch. 85 ch. 5; Sisson* v. *Donnelly, 30 N. J. Law (7 Vr.) 432; Rue* v. *Meirs, 43 N. J. Eq. (16 Stew.) 377, 383.*

I am satisfied that this written agreement is the contract of the wife, according to which there was not to be erected on her land any building within five feet of the westerly line of the lot conveyed by her and her husband to the complainant, a stipulation which the defendant has disregarded.

The next objection is that the contract is not binding on the wife because she was not the owner of the land, for the benefit of which the agreement was made, and also that it was without consideration. I take it to be well settled that equity will compel the observance of a covenant, founded upon a valuable consideration, by which the owner of land imposes upon it limitations as to its use which are reasonable in character, and shall hold that the wife, having an interest in both parcels, could legally impose

upon her land for the benefit of the land sold, the restriction contained in her agreement, if there was a valuable consideration to sustain it.

It appears by the testimony and the recitals in the agreement that the husband, by a deed in which the wife joined, had conveyed to the complainant a lot of land on which there was then erected a dwelling, the westerly side line of which, including the eaves of the building, extended to the boundary line between the lot conveyed and that owned by the wife, and for a part of the consideration paid, the wife and her husband agreed in a writing separate from the deed, executed at the same time and as a part of the transaction, that no building should be erected on the wife's lot within five feet of the westerly line of the lot conveyed to the complainant. The interest of the wife in the lands conveyed to the complainant was an inchoate dower which our courts have recognized to be a valuable interest. *Wheeler* v. *Kirtland,* *27 N. J. Eq.* (*12 C. E. Gr.*) *534.* It follows, therefore, that if the covenant which she entered into with the complainant tended to enhance the purchase price, and the presumption is that it did, her inchoate dower was increased in value thereby, and such increase undoubtedly is a sufficient consideration for the agreement sought to be enforced, and, in my judgment, if the wife was erecting the building complained of, it would be the duty of this court to require her to stand by her bargain.

If this agreement binds the wife, it will be enforced against any other person into whose hands the land passes, with notice of the covenants, although not recorded. The complainant insists that the defendant, before taking title to the land, had notice of the covenant, or sufficient notice thereof to put him on inquiry. The defendant testifies that on the day he agreed to purchase the lot he had an understanding with Mr. McClellan, who was acting for his wife in the negotiations of sale, that there was a restriction on five feet to the land, but was not told about it until he had paid $100 on account of his contract of purchase. The pertinent evidence on this point is as follows:

"*Q.* You had an understanding about a restriction on the five feet?
"*A.* Yes.
"*Q.* When did you have that?

"*A.* On the day I purchased the lot; let me see, it was after I had paid my first money.

"*Q.* After you paid your first money?

"*A.* Yes.

"*Q.* Then he told you that there would have to be a restriction?

"*A.* Mr. McClellan, after receiving my money and writing me a receipt, which I have brought here, came back to me and said, 'By the way, there is some little restriction on this lot; it is about five feet;' and he said, 'Of course, I don't suppose that you want to build closer than five feet;' I said to him, 'Mr. McClellan, I am a little surprised at this; if you had told me that before I paid you, we might have considered the matter a little differently,' but I said, 'However, I would like to know what these restrictions are, and whether they prevent me from building a bay-window;' he said, 'They do not; it is simply the five feet from Mr. Wahl's line to your house—that is, the body of your house or wall.' "

It further appears that at that time defendant knew that the complainant was in possession of the adjoining property, but did not go and see her with reference to this restriction. The defendant paid the consideration for his lot to a title company in Atlantic City, with the expectation that the company would get the deed and put it on record, which it did. This deed contained a restrictive covenant in the precise words of the agreement between Mrs. McClellan and the complainant, and is dated the 1st day of September, 1904. On the 13th day of June, 1905, Mary A. McClellan and her husband executed a new deed to the defendant reciting that the restrictive covenant was inserted in the original deed by "inadvertence and mistake," and contained a modification of the restriction in the words hereinbefore set out, but the later deed can have no effect upon this controversy if, as a matter of fact, the defendant, before he completed his purchase, knew, or was chargeable with notice, of the character of the contract between his vendor and the complainant. The recital in the second deed does not conform to the truth, because the vendor knew the character and nature of her covenant, and was careful to have it inserted in the earlier deed, and it is incredible that by "inadvertence and mistake" she inserted in her deed a covenant which she had so solemnly agreed to insert. Nor am I disposed to accept the statement of the defendant that the first deed as drawn and recorded did not conform to his understanding, for a long time after the deed came to his possession, and after he was aware of the nature of the restriction, he went

to the husband of the complainant and stated that he had gone
to considerable expense preparing his plans and specifications,
and found that there were restrictions covering five feet, which
would require him to build nearer Pacific avenue than he wished
to, and desired that the complainant should by deed relieve three
feet of the five of the restriction, which he would hardly have
done if he thought the restriction claimed to have been improp-
erly inserted could be removed by the explanatory deed of his
vendor, which he afterwards procured.

As to actual notice not proved by direct evidence, but to be
inferred in part from circumstances, the rule is laid down in
*Pom. Eq. Jur.* § *597* that if the party obtains knowledge or
information of facts tending to show the existence of a prior
right in conflict with the interest which he is seeking to obtain,
and which are sufficient to put a reasonably prudent man upon
inquiry, then it may be a legitimate inference that he acquired
the further information which constitutes actual notice. This
inference is not a conclusive presumption of law. It may be
defeated by proper evidence. Yet, if it appears that the party
obtains knowledge or information of such facts which are suffi-
cient to put a prudent man upon inquiry, and which are of such
a nature that the inquiry, if prosecuted with reasonable dili-
gence, would certainly lead to a discovery of the conflicting
claim, then the inference that he acquired the information con-
stituting actual notice is necessary and absolute, for this is only
another mode of stating that the party was put upon inquiry,
that he made the inquiry and arrived at the truth. And the
same result follows if the party has sufficient knowledge to
require him to make the inquiry if he neglects to do it, or,
having begun it, fails to prosecute it in a reasonable manner.
The information need not be so full and detailed as to communi-
cate a complete description of the opposing interest. It is suffi-
cient if it asserts the existence of a right or interest as a fact.
If a vendor informs the vendee that the subject-matter is subject
to an outstanding lien or equitable claim, such information is
sufficient. It need not state all the particulars or impart com-
plete knowledge. It is enough if he has reasonable ground to
believe that a conflicting right exists as a fact. Whenever the

information given by the grantor would constitute notice, the same information communicated by the representative of the vendor will operate with equal force, provided the party represented was prevented by absence or disability from making the communication on his own behalf. To what extent the purchaser is charged with notice of the encumbrance and its character is regulated by the interest of the person making the communication. Information given by a third person having no interest in the matter, who, after stating the charge upon the subject-matter, also declares that it has been abandoned or no longer exists, the purchaser may generally rely upon the whole communication, and unless there is some special reason for believing the statement regarding the encumbrance and rejecting that which relates to its discharge, the purchaser may rely upon the whole statement. But a different rule prevails where the representation is made by the vendor or person parting with an interest in the subject-matter, and where such person admits some outstanding claim upon or equity in the property, his further declaration that the defect has been cured or the equity destroyed will not warrant the purchaser in relying upon this explanation or contradiction, for the informant is under a strong personal interest to misrepresent or conceal the real facts.

The testimony in this case shows that at the conclusion of the negotiations between the McClellans and the defendant he was informed by the vendor that there was some little restriction on the lot, covering above five feet, and the defendant testified that the vendor said, "Of course, I don't suppose that you want to build closer than five feet," to which the defendant replied that he would like to know what the restrictions were and whether they prevented him from building a bay-window, and was informed, "They do not; it is simply the five feet from Mr. Wahl's line to your house—that is, the body of your house or wall." In my judgment, it then became the duty of the defendant to inquire, from the person in whose favor the restriction was made, regarding its character and extent, and is chargeable with notice of all the facts which an inquiry, properly pursued, would have revealed. The defendant knew that the complainant was in possession of the adjoining lot; that there was a building standing

on that lot substantially on the boundary line between complainant's lot and the lot which the defendant was purchasing, and he knew that the restriction related to his right to build some part of his dwelling within five feet of complainant's line. This was sufficient information regarding a restriction or an equity in favor of the complainant attached to the vendor's title to charge him with the duty of inquiring regarding it from the person for whose benefit it had been created. In addition to this, I am not disposed to credit the testimony of the defendant that the vendor made the statement in the language used by defendant, for it is entirely at variance with the agreement imposing the restriction and as set out in the deed which was afterwards executed and delivered to the defendant.

I am satisfied from the evidence in this case that when the defendant purchased this lot he was informed by the vendor that the deed to him would contain a covenant preventing him from building upon his lot within five feet of the complainant's line, and that the deed to him originally made by the vendor contained the restrictive covenant precisely as he had understood it should. But if I am wrong about this, I am very clear that he had sufficient notice to put him upon inquiry, and that he is chargeable with the knowledge which he would have obtained if he had applied to the person in whose favor the restrictive contract was made, and that upon inquiry of the complainant—an inquiry, in my judgment, he was bound to make—the contents of the written agreement would have been disclosed to him. This case falls within the first rule laid down by Vice-Chancellor Wigram, in *Jones* v. *Smith, 1 Hare 43,* which is that where the party charged has had actual notice that the property in dispute was in fact charged, encumbered, or in some way affected, the court binds him with constructive notice of facts and instruments, to the knowledge of which he would have been led by an inquiry relating to the charge, encumbrance or other circumstances affecting the property of which he has had notice. See, also, *Hoy* v. *Bramhall, 19 N. J. Eq.* (*1 C. E. Gr.*) *563.*

The conclusion which I have reached is that the complainant is entitled to the relief prayed for in her bill of complaint, with costs, and I will so advise.