Complainant, Rayhertz Amusement Corporation, entered into a lease with the defendant Fulton Improvement Company, a corporation, on September 27th, 1934, for premises in the city of Newark, described as "that part of the building at the northeast corner of Broad and Fulton streets devoted exclusively to theatre purposes, including all fixtures, furniture, scenery and equipment of any kind which may be the *Page 123 
property of the lessor, with the appurtenances and which is now used in connection with the operation of the theatre on said premises. This demise does not include any part of the building on said premises which consists of stores and offices or which is not devoted to theatrical purposes." (Italics mine.)
The lease provided for peaceful possession and by paragraph 21 for renewal for a further period of five years "except that the demised premises shall include the entire building at the northeast corner of Broad and Fulton streets, Newark, New Jersey, owned by the lessor, subject to any leases on parts other than the demised premises * * *." The rental reserved for a renewal was $20,000 per year, plus annual taxes. (Italics mine.)
The building on the northeast corner of Broad and Fulton streets fronts on Broad street and consists of stores and offices. The theatre building is located in the rear of the store and office building, and is entirely independent of the store and office building, except for the entrance to it from Broad street through a lobby in the store and office building. There is a windlass on the roof of the theatre building used to raise and lower scenery on the stage, and also a ventilator shaft used in connection with the ventilation system of the theatre.
The description of the demised premises as a matter of settled law included the outside walls and the roof of the theatre building, since as a general rule everything which belongs to the demised premises or is used with, and appurtenant to them and which is reasonably essential to their enjoyment passes as an incident to them, unless especially reserved. Moreover it appears from the lessor's acts and conduct, that it recognized complainant's right under the lease to the roof of the theatre building.
On March 5th, 1935, the defendant lessor wrote complainant advising that it had been approached by an advertising company to lease space "on our roof for an illuminating sign" and therein stated "we feel that such a sign would brighten up the theatre corner, and might add some major business *Page 124 
to the theatre. However, before we lease out this space, we would like to give you the first chance to take it. * * * We would not charge you for this space, and will be willing to forego the income which the advertising company would pay * * *." This letter was followed by another letter to the complainant dated September 5th, 1936, in which attention is called to the previous letter in which inquiry was made whether complainant would be interested in erecting a sign on the roof of the Broad Street Theatre building for the purpose of advertising the theatre. "We are making arrangements now to lease out the space on the roof, for a good size sign" reads this letter. "It is necessary that we complete our arrangements with the sign company by Monday, September 14th * * *. We are therefore giving you until September 12th, the opportunity of leasing this space at the same price that the sign company is willing to pay to us. If we do not hear from you by September 12th, we will go ahead with our plans as outlined."
In the interim negotiations between the lessor and the defendant United Advertising Corporation, continued. The lessor and the United Advertising Corporation, however, recognizing complainant's right to the roof of the theatre building
endeavored to modify paragraph 21 of the original lease and for that purpose the defendants caused an agreement in writing to be prepared and submitted to the complainant for its signature on or about March 23d 1937. The agreement was between complainant and the United Advertising Corporation. The agreement recites that the Fulton Improvement Company and the United Advertising Corporation desire to enter into a lease for the "roof or roofs of the building or buildings known as 566-570 Broad street," and since there "may be the possibility of ambiguity in the construction" of paragraph 21, in the words "subject to any leases on parts other than the demised premises" that paragraph 21 is to read as follows:
"The following words contained in the Twenty-first Paragraph of the aforesaid lease made by said Fulton Improvement Company to the party of the first part, bearing date September 27th, 1934, viz. *Page 125 
`subject to any leases on parts other than the demised premises' shall be interpreted and construed as if they read as follows: `subject to any leases which are now made or hereafter may be made on parts other than the demised premises' and that any renewal of the aforesaid lease made by the said Fulton Improvement Company to the party of the first part shall be subject and subordinate to any lease made by the said Fulton Improvement Company to the said party of the second part for theroof or roofs of the building or buildings known as 566-570 Broad Street, situate at the northeast corner of Broad and Fulton Streets, in the City of Newark, New Jersey, and that if such a lease is executed and delivered, said party of the first part will not disturb the said party of the second part, its successors or assigns, in its or their use, occupation and possession of the roof or roofs of said building orbuildings during the term of such lease, or of any renewal
thereof." (Italics mine.)
Notwithstanding complainant's refusal to execute the agreement, the lessor entered into a lease with the defendant United Advertising Corporation, on April 6th, 1937, for the term of three years at the annual rental of $3,600 per year for "theentire area of the roof surface within the outside walls of the building or buildings known as Nos. 566-570 Broad street," which demise includes the roof of the theatre building with the right to renew the lease upon the same terms and conditions for a further term of two years "solely for the erection, operation and maintenance of an electrical illuminated sign and its necessary equipment, with the right to substitute at any time one sign for another." (Italics mine.)
Shortly after the execution of the aforesaid lease, the defendants by their agents and servants invaded the premises of the complainant and commenced the erection of a large electric sign on the roof of the theatre. Access to the roof was had from outside the theatre building in such way that the complainant did not learn of the work being done until sometime later, when by letter, it promptly demanded of the Fulton Improvement Company and the United Advertising Corporation that they refrain from invading the leased premises. Upon failure to comply with its request complainant brought this bill of complaint praying injunction. After the service of an order to show cause granted upon the filing of the bill of complaint and pending final hearing of the cause the defendants (at their peril) proceeded to erect and *Page 126 
actually completed a large electric sign at a cost of approximately $7,000.
The answers of the Fulton Improvement Company and the United Advertising Corporation set up that the sign was erected with the permission of the complainant, and with the knowledge and consent on the part of complainant to the making of the lease between Fulton Improvement Company and the United Advertising Corporation. Inherent in these defenses is the admission by the defendants that the complainant's permission and consent was necessary. I find as a fact that the evidence fails to sustain such defenses.
The answer of the Fulton Improvement Company further sets up the defense of laches, that complainant has an adequate remedy at law, and a counter-claim alleging mutual mistake and prays reformation of the original lease to the end "that the roof on the building of said premises shall be excluded from the operation of said lease."
The complainant's protest against the contemplated erection of the sign and the promptness with which it brought this suit upon learning of the invasion of the leased premises is dispositive of the defense of laches. The defendants knowingly, designedly and in the face of protests and warnings from complainant, proceeded with their wrongful construction of the sign. The counter-claim will be dismissed for lack of evidence to support it.
The fourth defense denies the jurisdiction of the court. In the instant case the legal right of complainant is clear not only upon the face of the lease, but from the evidence I find that the right was recognized and admitted by the landlord, so that the instant matter is one where the legal right of complainant, though formally disputed, is yet clear, on facts which are not denied and legal rules which are well settled, and where the object of the bill of complaint is to enforce or protect it in a manner not attainable by legal procedure. In such case this court has jurisdiction. Hart v. Leonard, 42 N.J. Eq. 416.
Equity's jurisdiction to enjoin continuous trespass is well established. 1 Pomeroy Equity (4th ed.) 252; 5 PomeroyEquity 4359 § 1921; Southmayd v. McLaughlin, 24 N.J. *Page 127 Eq. 181; Morris and Essex Railroad Co. v. Hudson TunnelRailroad Co., 25 N.J. Eq. 384; Hirschberg v. Flusser, 87 N.J. Eq. 588;Man v. Vockroth, 94 N.J. Eq. 511. Courts of law are not by reason of the nature of their processes able to give complete and adequate relief through actions at law for trespass. Complainant is entitled to the enjoyment of the demised premises in the position in which it was before the defendants encroached upon it, and to quiet and peaceful possession thereof. It is only by the process of mandatory injunction that the obligation to remove the sign can be placed directly on the defendants who caused it to be erected. Nor can it be here appropriately contended by defendants that the damage which will be suffered by them in vacating the roof which they now occupy will be disproportionate to the benefits accruing to complainant. Defendants were notified before they erected the sign of complainant's objection and the present bill was promptly filed. Defendants completed the erection of the sign, well knowing of complainant's claim and in the face of the present bill. Under the circumstances, the defendant Fulton Improvement Company, cannot now reasonably complain of the loss it may sustain in being compelled to comply with the terms and conditions of its lease, and the same is true of the defendant United Advertising Corporation, for it was fully acquainted with the terms of the lease, the protest of complainant, and together with the other defendant proceeded with the erection and completion of the sign in the face of such protest and this proceeding to which it was made a party. Supplee v. Cohen, 80 N.J. Eq. 83, 89.
In a suit of the kind here under consideration, the court does not consider the inconvenience or damage which may result to the defendants from putting the complainant in possession of its property. Cutrona v. Columbus Theatre, Inc., 107 N.J. Eq. 281.
Upon final hearing, equity courts enjoin according to the rights of the parties regardless of the inconveniences. TribuneAssociation v. Simonds, 104 Atl. Rep. 386.
I will advise a decree for a mandatory writ of injunction requiring defendants to remove the sign in question. *Page 128